# PORT AUTHORITY OF THE CITY OF ST. PAUL v. MICHAEL P. GROPPOLI AND OTHERS.

202 N. W. 2d 371.

November 17, 1972—No. 43507.

2

*Robins, Davis & Lyons, Elliot S. Kaplan,* and *James R. Safley,* for appellants.

*Kenneth J. Fitzpatrick,* City Attorney, and *R. Scott Davies,* Deputy City Attorney, for respondent.

MacLaughlin, Justice.

An action was commenced by the Port Authority of the City of St. Paul in January 1971 to condemn certain property owned by respondents. Respondents asserted that the petition for condemnation should be denied because the taking was not for a public purpose. The trial court found that the taking was for a public purpose and issued an order granting the petition. We granted respondents' request for a discretionary review of the order of the trial court. The order is reversed.

The issue is whether the taking of respondents' property by the Port Authority is for a public purpose. The Port Authority of the City of St. Paul is a municipal corporation organized and existing under Minn. St. c. 458, and is authorized by law to acquire by condemnation any property in the port district which may be needed by it for a public purpose. Minn. St. 458.17. On August 9, 1960, the Authority formally established within the port district the Riverview Industrial Park. In Port Authority of City of St. Paul v. Fisher, 269 Minn. 276, 132 N. W. 2d 183 (1964), we determined that the lands constituting Riverview Industrial Park were blighted or marginal and that the creation of the Park satisfied the prerequisites of c. 458. The parcel of property involved here is within the Park.

The property is improved with a building which is more than 40 years old and which has been used by respondents since 1960 or 1961 to warehouse and distribute beer. The warehousing use conforms to the plan of development for the Park, but there was

evidence that the physical characteristics of the building were not compatible with the overall plan of development because they do not meet the Park's restrictive covenants and are not completely consistent with the expected aesthetic standards.

On August 29, 1961, and again on February 20, 1962, the Authority authorized its staff to acquire the subject property. On December 28, 1961, a representative of American Hoist & Derrick Company (hereafter Hoist) wrote a letter to the Authority which contained this language:

"We wish to be on record that our company should be considered the No. 1 prospect for the acquisition and proper usage of any area cleared for the industrial development program on the riverside of Fillmore Street and, as a minimum, between Robert Street and State Street. Should any of these parcels be offered to anyone else without first giving American Hoist & Derrick Company the right of refusal we would consider it an unfriendly act and not in the best interests of American Hoist & Derrick Company and the City of St. Paul."

The subject parcel is located in the area described in the letter. Respondents attempted to introduce the letter into evidence at the trial, but a hearsay objection to the letter was sustained.

Negotiations began between the Authority and respondents for the purchase of the property. Respondents were informed that the building was to be demolished and that the land would be transferred to Hoist for uses connected with its business operations. Subsequently, respondents learned from the president of Hoist that the building was not going to be demolished but would be used "as is" by Hoist. Continuing negotiations failed to lead to an agreement of sale by respondents to the Authority, and no further action was taken for some time by the Authority. In 1968, respondents purchased adjacent properties, and their property then satisfied the Park's required land-to-building ratio. The Authority made no objections to the purchase.

In March 1969, Hoist brought a declaratory judgment proceeding against the Authority to, among other things, compel the Authority to lease respondents' property to Hoist after it was acquired, pursuant to an alleged agreement between Hoist and the Authority.[1] The Authority's answer to that action contained the following as one of its defenses:

"In the event there is an agreement as alleged by the plaintiff, said agreement is illegal and unenforceable since it constitutes the taking of property for the exclusive benefit of the plaintiff and not for the benefit of the Port District or the citizens thereof, all contrary to the Constitution and Laws of the State of Minnesota and the United States of America."

Respondents attempted to introduce the Authority's answer in the Hoist lawsuit into evidence, but it was not admitted.

On February 24, 1970, the Authority, by formal resolution, approved a settlement of the Hoist lawsuit. The settlement, among other things, required the Authority to proceed to condemn the subject property. The approved stipulation of settlement also requires the Authority to lease the land and building to Hoist in an "as is" condition after it has been acquired. The petition for condemnation was then served and filed, with the subsequent trial and order leading to this appeal.

1. Respondents argue that the letter of December 28, 1961, from Hoist to the Authority and the answer interposed by the Authority in the Hoist lawsuit should have been admitted into evidence. It is not necessary to consider these contentions because we are satisfied on other grounds that the taking was not for a public purpose.

2. The trial court made the following finding:

"That Petitioner has orally agreed to allow a private industrial

---

[1] On August 20, 1968, a resolution authorizing the taking of the subject property was adopted by the Authority. Similar resolutions had been adopted in August 1961 and February 1962. The Hoist lawsuit followed the 1968 resolution.

interest to use the parcel named herein and the buildings thereon in an 'as is' condition for a period not to exceed five (5) years; that such use is not unreasonable in light of the overall time period required for development of the Riverview Industrial Park."

This finding is apparently based on testimony at the trial by Frank D. Marzitelli, executive vice president of the Authority. Part of this testimony was as follows:

"Q. Thank you. Mr. Marzitelli, one other question, just so it's clear in the record. At any time during which you were negotiating or discussing this property with either American Hoist & Derrick or Capitol City Distributing Company, did you ever reach an accord on the issue of whether or not the building would be used for a period of more than five years by the proposed new lessee, American Hoist & Derrick?

*    *    *    *    *

"A. We reached no formal agreement. We had discussions on the question; and, to the best of my knowledge, and on the basis of the record which I located late last night, the five years that I insisted was the maximum period that the company would be remaining in the building, if they were in fact permitted to lease the building, is the period that we discussed. No period longer than five years was ever discussed. And there was no agreement even reached on that. This is merely a proposal."

However, attached to the stipulation of settlement of the Hoist lawsuit against Authority is a copy of the lease which the Authority agreed to enter with Hoist. That lease states:

"To HAVE AND To HOLD [the subject premises], with quiet and undisturbed possession for a term commencing on the _____ day of _____, 19__, and ending thirty (30) years thereafter * * *."

It further states that the lease can be terminated during its term only for the standard reasons; e.g., misuse of the property, failure to comply with the terms of the lease.

The stipulation and all attached exhibits, including the lease, were specifically approved by the Board of Commissioners of

the Port Authority in its resolution in February 1970. Marzitelli admitted that although he makes recommendations to the commissioners, they are the "supreme body" in finally approving or disapproving any agreement. From its plain and unambiguous language, the lease which the Authority agreed to enter with Hoist for the subject property was for a term of 30 years. Hence, the finding of the trial court was clearly erroneous.

3. The central question is whether the trial court correctly found that the taking of this property is pursuant to a public purpose and therefore authorized by law.

We are not unaware of the number of cases which have upheld the right of condemning authorities to take private property in the face of the charge that the taking was not for a public purpose. E.g., Visina v. Freeman, 252 Minn. 177, 89 N. W. 2d 635 (1958); Asch v. Housing & Redevelopment Authority, 256 Minn. 146, 97 N. W. 2d 656 (1959); Housing & Redevelopment Authority v. Greenman, 255 Minn. 396, 96 N. W. 2d 673 (1959); Housing & Redevelopment Authority v. Minneapolis Metropolitan Co. 259 Minn. 1, 104 N. W. 2d 864 (1960); Housing & Redevelopment Authority v. Coleman's Service, Inc. 281 Minn. 63, 160 N. W. 2d 266 (1968). Several cases have upheld the right of the condemnor to resell the property to private individuals after it has been redeveloped, e.g., Housing & Redevelopment Authority v. Greenman, supra; Asch v. Housing & Redevelopment Authority, supra; Housing & Redevelopment Authority v. Coleman's Service, Inc. supra.

In Port Authority of City of St. Paul v. Fisher, supra, we stated that the following principles control in determining whether a public purpose is present (269 Minn. 288, 132 N. W. 2d 192):

"* * * (1) The state or its municipal subdivisions or agencies may expend public money only for a public purpose. (2) A 'public purpose' is such activity as will serve as a benefit to the community as a body and which, at the same time, is directly related to the functions of government. (3) A legislative declara-

tion of public purpose is not always controlling. In the final analysis, the courts must make the determination. (4) The mere fact that some private interests may derive an incidental benefit from the activity does not deprive the activity of its public nature if its primary purpose is public. On the other hand, *if the primary object is to promote some private end, the expenditure is illegal, although it may incidentally also serve some public purpose.*"

If the Authority is successful in obtaining the subject property, it is legally committed to lease the entire premises to Hoist for a period of 30 years. The lease to Hoist includes the building in an "as is" condition and does not require Hoist to improve or change the building in any manner. Paragraph VII of the proposed lease provides, in part, as follows:

"Tenant shall at all times and at its own expense keep the land which is herein leased in a good and tenantable condition. Neither the Landlord nor the Tenant shall be under any obligation to make any repairs or improvements to the buildings and structures which may exist on said parcels or may thereafter be constructed or erected thereon except to keep the same in a safe, neat and clean condition.

"Tenant may, at its own expense, make any improvements to the Demised Premises which Tenant, in its sole discretion, deems to be necessary or appropriate * * *."

Apparently, at least for the term of the lease, no redevelopment of the land or building is contemplated.

In the Greenman case, where we upheld the transfer of lands by the condemning authority to private parties, we stated (255 Minn. 405, 96 N. W. 2d 680):

"There are many authorities holding that various so-called redevelopment statutes which provide for the exercise of the power of eminent domain, the expenditure of public funds, and the lending of public credit are valid despite provisions for the transfer of lands thus acquired by public authority to private parties. *The underlying reason for these decisions is that the ac-*

*quisition and clearing of blighted areas completely serves a public purpose.* The subsequent transfer of these lands to private parties is incidental to the main public purpose." (Italics supplied.)

We continued (255 Minn. 407, 96 N. W. 2d 681):

"* * * The fact that the act does not thereafter insure a continued use for public purpose does not in any way affect the purpose of the act or render the taking of the property a taking for a use or purpose which is not public. *'The achievement of the redevelopment of slum and blight areas, as defined in the act,* * * * *constitutes a public use and a public purpose, regardless of the use which may be made of the property after the redevelopment has been achieved.'* " (Italics supplied.)

In this case, the subject property is clearly not being acquired for the purpose of development or redevelopment. The building and land will continue in their present condition but will be transferred to another private occupant under a long-term lease. There is no evidence to support a contention, and no contention has been made, that the failure to obtain this specific property would seriously interfere with the overall development plan for the area. Indeed, if the land and building are to be leased for a period of 30 years, it would be difficult for the Authority to effectively make such an argument.

Great weight is given to the condemning authority's determination that a public purpose is involved. We have stated many times that courts may interfere only when the action of the condemnor is manifestly arbitrary or unreasonable. It is presumed that property taken by eminent domain is taken for the stated purpose of the condemnor. However, courts have not completely abdicated their power to prevent an abuse of discretion in those cases where an owner's constitutional rights are threatened by a proposed taking for a private rather than a public purpose. We stated in State ex rel. Ford Motor Co. v. District Court, 133 Minn. 221, 227, 158 N. W. 240, 243 (1916), that "it is the duty of the courts to intervene for the protection of the property own-

er whenever it clearly appears that, under the guise of taking his property for a proper purpose, it is in fact being taken for an improper purpose." This is such a case. It is our opinion that the taking of the instant parcel is an unconstitutional taking of private property for a private use. The leasing of this property to a private party for 30 years without substantial change in the nature or character of the property is inconsistent with constitutional requirements for the proper taking of private property. In our judgment, the Authority has acted in a manifestly arbitrary and unreasonable manner in the taking of this parcel, and, accordingly, we reverse the order of the trial court granting the condemnation petition.[2]

Respondents request an award of attorneys' fees. We have found no authority either in the statutory or common law for the request, and it is therefore denied.

Reversed.

---

[2] We do not pass upon whether this taking would be private or public if the lease involved was for a period of 5 years. Undoubtedly, a short-term lease may at times fit into a public-purpose plan of development where during the lease term other parcels are being acquired and other development work is proceeding.