# HOUSING AND REDEVELOPMENT AUTHORITY OF CITY OF ST. PAUL v. LOUIS W. SCHAPIRO AND OTHERS.
## PETER P. NERENBERG AND ANOTHER, APPELLANTS.

210 N. W. 2d 211.

August 3, 1973—No. 44104.

*Firestone, Fink, Krawetz, Miley & Maas, James P. Miley,* and *William W. Fink,* for appellants.

*James T. Hart* and *Jack F. Sjoholm, Jr.,* for respondent.

MacLaughlin, Justice.

An action was commenced in March 1972 by the Housing and Redevelopment Authority of the City of St. Paul to condemn certain property owned by respondents, Peter and Evelyn Nerenberg. Respondents asserted that the petition for condemnation should be denied because, among other things, the taking was not for a public purpose and the Authority acted in bad faith. The trial court found that the taking was for a public purpose and that the Authority had not acted in bad faith. Respondents appeal to this court from the denial of their alternative motion for amended findings of fact, conclusions of law, and order for judgment, or for a new trial. We affirm.

Respondents own land in downtown St. Paul which is improved with a building where they operate a retail furniture store known as the Northern Furniture Company. The property is located in an urban renewal development project designated by the city of St. Paul as Central Core, Minn. A-1-5 and adopted pursuant to the Municipal Housing and Redevelopment Act, Minn. St. 462.411 to 462.711. The project receives Federal financial assistance under Neighborhood Development Programs, 82 Stat. 518, 42 USCA, § 1469, et seq.

Respondents' land is on the southeast corner of a downtown block known in these proceedings as Block 36. The block was designated by the Authority as a clearance area after a study disclosed that 9 of the 14 buildings in the block were substandard and that it contained the highest incidence of substandard structures in the Central Core Project. Respondents' building, however, was not designated as substandard.

Other blocks in downtown St. Paul were also designated as clearance areas after studies by the Authority. The testimony revealed that the St. Paul City Council would not authorize the clearance of any of these areas until it was assured of a developer for the property. The Authority therefore sought out developers by conducting interviews with area businessmen.

Norman B. Mears, who owned property near Block 36, expressed an interest in developing Block 36. Mears wrote a letter to the mayor and to the city council on June 4, 1971, expressing his intent to submit a proposal for the development of the south half of Block 36, including respondents' property, if it was made available by the Authority.

The Authority then submitted to the city council its proposal to clear the south half of Block 36. Developer Mears indicated to the council that respondents could relocate their furniture business in the Harris Building, which Mears owned, located across Sibley Street from respondents' property.[1] On June 17, 1971, in spite of respondents' objections, the city council approved the taking, including respondents' property.

Subsequently, because of continuing objections by respondents, the Authority made studies to consider the possibility of developing Block 36 without taking respondents' property. Respondents expressed a willingness to rehabilitate their building consistent with any plans adopted by the Authority. Authority officials made a trip to Florida to, among other things, suggest to developer Mears a plan which excluded taking respondents' property. However, Mears took the position, based partly on the strategic corner location of respondents' property, that he would not be willing to redevelop Block 36 if respondents' property was not taken.

The Authority then commenced the present action to condemn respondents' property. Respondents objected to the taking, and the trial court found that the taking was for a valid public purpose and was done in good faith.

■ The principal issue is whether the taking of respondents'

---

[1] Mears and respondents were never able to agree upon a lease or ownership arrangement in the Harris Building. Respondents contend that Mears acted in bad faith by placing difficult conditions on respondents' rental or purchase of the Harris Building. However, respondents fail to demonstrate how this affects the legality of the taking by the Authority.

property by the Authority is for a public purpose or whether, as respondents contend, it is an unconstitutional taking of private property for a private purpose.

It is elementary that the power of condemnation may be exercised only for a public use or purpose. E.g., Visina v. Freeman, 252 Minn. 177, 89 N. W. 2d 635 (1958); Asch v. Housing & Redevelopment Authority, 256 Minn. 146, 97 N. W. 2d 656 (1959); Housing & Redevelopment Authority v. Greenman, 255 Minn. 396, 96 N. W. 2d 673 (1959); Housing & Redevelopment Authority v. Minneapolis Metropolitan Co. 259 Minn. 1, 104 N. W. 2d 864 (1960); Port Authority of City of St. Paul v. Fisher, 269 Minn. 276, 132 N. W. 2d 183 (1964); Housing & Redevelopment Authority v. Coleman's Service, Inc. 281 Minn. 63, 160 N. W. 2d 266 (1968); Port Authority of City of St. Paul v. Groppoli, 295 Minn. 1, 202 N. W. 2d 371 (1972). If private property is taken for a use that is not public, the owner's constitutional rights are infringed. Port Authority of City of St. Paul v. Groppoli, *supra.*

Respondents contend that, because developer Mears would not redevelop Block 36 unless respondents' property was included, the taking is for Mears' private use and is therefore unconstitutional. Respondents rely on Port Authority of City of St. Paul v. Groppoli, *supra,* in which we held improper the taking of a beer warehouse because the condemning authority was committed to lease the building "as is" to a third-party private concern for 30 years. We held that the property was not being acquired for the purpose of development or redevelopment and that it was an unconstitutional taking of private property for a private use.

This case is clearly distinguishable from Groppoli. Here, respondents' property is being acquired for redevelopment. The Authority and Mears have entered a contract, which is in evidence, requiring the Authority to demolish and remove from respondents' land all existing buildings, structures, and improvements. The trial court states in its memorandum that it is intended that respondents' land be cleared so that it can be used in keeping with the overall plan of development. Respondents have

pointed to no evidence to contest the fact that the land is to be cleared for redevelopment purposes.

That the Authority intends to transfer the condemned property to a private developer does not alone make this an improper taking. The acquisition and clearing of blighted areas itself serves a public purpose, and subsequent transfer of such lands to private parties is incidental to the main public purpose. Housing & Redevelopment Authority v. Greenman, *supra*; Asch v. Housing & Redevelopment Authority, *supra*; Housing & Redevelopment Authority v. Coleman's Service, Inc. *supra*. Nor does the fact that respondents' building is not substandard invalidate the taking. The problem of eliminating blighted parts of a community may be attacked on an area basis rather than a structure-by-structure basis. This very issue was discussed and decided in the Minneapolis Metropolitan Co. case:

"As to the contention of the company that the building should not be taken because it is a sound building, we can only refer to Berman v. Parker, 348 U. S. 26, 75 S. Ct. 98, 99 L. ed. 27, where the same contention was made by the property owner and where it was held that the Authority is permitted to attack the problem of blighted parts of a community on an area rather than on a structure-by-structure basis. There, as here, the particular use to be made of the land in the project area was determined with regard to the particular needs of the community. Those charged with making the determination decided that if the area was to be restored to a use which would be productive to the community as a whole the entire area needed redesigning. Even though the building be sound and capable of being economically operated, we must defer to the judgment of the commission that the interests of the public will be better served by the condemnation." 259 Minn. 16, 104 N. W. 2d 875.

We hold, based upon an examination of the entire record, that the trial court did not err when it found the taking of respondents' property to be for a public purpose.

■ The next issue is whether the trial court's finding that the Authority acted in good faith is clearly erroneous. Respondents rely on Redevelopment Authority v. Owners or Parties in Interest, 1 Pa. C. 378, 274 A. 2d 244 (1971), which held invalid a taking by a condemnor found to be in palpable bad faith. That case holds that if there is a "tainted motive" in the taking, it may be held improper and invalid. While the motive of the condemnor is doubtless a significant and important factor in a taking of private property, we believe respondents have failed in their burden of showing bad faith and that the trial court was correct in finding that the Authority acted in good faith in this taking.

Respondents' contention of bad faith is based primarily on the fact that the Authority, on the urging of respondents, studied the possibility of omitting respondents' property from the taking, but then decided to take it, as originally planned and approved, when Mears concluded that he would not act as developer if respondents' property was not included. If we were to hold these facts sufficient to show bad faith on the part of the condemnor we would effectively discourage attempts by condemnors to reconcile differences with dissatisfied property owners both before and after clearance plans are approved. Respondents' property was included in the original proposal which was approved by the appropriate authorities, including the city council. Thereafter, at the request of respondents, the Authority agreed to review the plan as it affected respondents' property. At least in part because the Authority would lose the developer whose participation was an essential factor in obtaining council approval, the Authority declined to omit respondents' property from the taking. Rather than indicating bad faith, this evidences on the part of the Authority a genuine attempt to cooperate with respondents and to satisfy their objections. We cannot agree that such activity can, at a later point in the proceedings, be successfully used against the Authority to show bad faith.

Respondents argue that certain other actions of the Authority show bad faith. We have carefully reviewed these contentions

and have concluded that they are without merit. The factfindings of a trial court are not to be set aside unless clearly erroneous. The findings are clearly erroneous only if, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed. In re Estate of Balafas, 293 Minn. 94, 198 N. W. 2d 260 (1972). We hold that the trial court did not err in its finding that the Authority acted in good faith.

■ Respondents claim that they were entitled to a jury trial on the issues involved herein. They cite no authority to support that claim, and we have found none. Minn. St. 117.075 provides:

"* * * [T]he *court*, at the time and place therein fixed or to which the hearing may be adjourned, shall hear all competent evidence offered for or against the granting of the petition [of condemnation], regulating the order of proof as it may deem best." (Italics supplied.)

We hold that the propriety of a taking in an eminent domain proceeding is properly one for a determination by the court and that respondents were not entitled to a jury trial.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.