PORT AUTHORITY OF THE CITY
OF ST. PAUL, petitioner,
Respondent,

v.

RLR, INC., et al., Defendants,

Insurance Auto Auctions,
Inc., Appellant.

No. A07–2206.

Court of Appeals of Minnesota.

Dec. 23, 2008.

Daniel J. Supalla, Marc J Manderscheid, Briggs and Morgan, P.A., Minneapolis, MN, for respondent.

Mark J. Kiperstin, Daniel N. Rosen, Parker Rosen L.L.C., Minneapolis, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; PETERSON, Judge; and SHUMAKER, Judge.

## OPINION

PETERSON, Judge.

In this appeal from a district court order that grants respondent access to appellant's property for the purpose of conducting environmental testing, appellant argues that respondent did not meet the requirements under the eminent-domain statute for entering property to conduct environmental tests. We reverse.

## FACTS

Respondent Port Authority of the City of St. Paul (the port authority) is a governmental subdivision established under Minn.Stat. § 469.049 (2006). The port authority may create and define the boundaries of industrial development districts to establish and develop a system of industrial developments. Minn.Stat. § 469.058, subd. 1 (2006). For the purpose of industrial development, the port authority may exercise the power of eminent domain under Minn.Stat. ch. 117, which is the general eminent-domain statute that establishes procedures for exercising the power of eminent domain. Minn.Stat. § 469.059, subd. 4 (2006). *See generally* Minn.Stat. ch. § 117 (2006) (establishing eminent-domain procedures).

In 1993, the port authority created an industrial and economic development district called the Arlington–Jackson Development District. The parcels of property in the western section of the district, which is referred to as "Arlington–Jackson West," are identified as parcels 1 through 19. Parcels 11–14 constitute the majority of Arlington–Jackson West and are occupied in whole or in part by appellant Insurance Auto Auctions, Inc. (IAAI).

From 1994 through 1997, the eastern part of the Arlington–Jackson Development District was developed as Phase I. During development planning in 1994 and 1995, the port authority hired American Engineering Test, Inc. to perform environmental analyses of the properties within the development district. The initial environmental analyses completed during Phase I determined that lead, petroleum, and other hazardous materials are present in the Arlington–Jackson West properties.

On April 24, 2007, the port authority passed Resolution 4212, which authorized the port authority's staff, legal counsel, contractors, or agents to obtain the consent of the owners and occupants of properties in Arlington–Jackson West to allow the port authority to conduct environmen-

tal testing and inspection of the properties, and if they could not obtain consent, to obtain a court order pursuant to Minn. Stat. § 117.041 (2006) to allow the testing and inspection. The port authority's stated bases for Resolution 4212 were that (1) because of the marginal condition of Arlington–Jackson West, the minimal jobs located there, and the lack of investment during recent years, the port authority had reason to believe that acquisition of the properties pursuant to eminent domain proceedings may be required; (2) prior and current uses of the properties and environmental testing conducted during Phase I gave the port authority good reason to believe that hazardous substances, pollutants, and/or contaminants are present in the area and that a release of one or more of these materials may have occurred; and (3) entry onto the properties is rationally related to the health, safety, or welfare concerns of the citizens of St. Paul and necessary for the purpose of environmental testing to identify the existence and extent of any release or threat of release of a hazardous substance, pollutant, or contaminant.

On June 29, 2007, the port authority filed a petition in the district court seeking an order to enter a number of properties in Arlington–Jackson West, including appellant's property, "for purposes of investigation, monitoring, testing, surveying, boring, or other similar activities necessary or appropriate to identify the existence and extent of a release or threat of release of a hazardous substance, pollutant, or contaminant." IAAI and other landowners in Arlington–Jackson West requested a continuance for more time to review the evidence and submitted a memorandum opposing respondent's petition.

The district court held an evidentiary hearing to determine whether the port authority met the requirements under the eminent-domain statute for entering a property for the purpose of environmental testing. In an order filed on October 31, 2007, the district court granted the port authority access to several parcels in Arlington–Jackson West for the requested purpose of environmental testing. Although the order granted access to a number of parcels, only IAAI appealed.

## ISSUE

Did the port authority meet the requirements under Minn.Stat. § 117.041 to obtain an order authorizing it to enter IAAI's property to conduct environmental testing?

## ANALYSIS

"On appeal, a [district] court's findings of fact are given great deference, and shall not be set aside unless clearly erroneous. . . . If there is reasonable evidence to support the [district] court's findings of fact, a reviewing court should not disturb those findings." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999) (citation omitted). "An appellate court is not bound by, and need not give deference to, the district court's decision on a question of law." *Bondy v. Allen*, 635 N.W.2d 244, 249 (Minn.App. 2001) (citing *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984)). "Issues involving the correct application of a statute are questions of law, which we review de novo." *In re Wrongful Death Proceeds for Next of Kin of Markuson*, 685 N.W.2d 697, 702 (Minn.App.2004).

IAAI argues that the district court erred by concluding that the port authority satisfied the requirements under the eminent-domain statute for obtaining an order authorizing the port authority to enter IAAI's property to conduct environmental testing.

The eminent domain statute states:

A ... political subdivision by resolution may enter property for purposes of investigation, monitoring, testing, surveying, boring, or other similar activities necessary or appropriate to identify the existence and extent of a release or threat of release of a hazardous substance, pollutant, or contaminant if:

(1) the ... political subdivision has reason to believe that acquisition of the property may be required pursuant to eminent domain proceedings;

(2) the ... political subdivision has reason to believe that a hazardous substance, pollutant, or contaminant is present on the property or the release of a hazardous substance, pollutant, or contaminant may have occurred or is likely to occur on the property; and

(3) entry on the property for environmental testing is rationally related to health, safety, or welfare concerns of the ... political subdivision in connection with possible eminent domain proceedings.

Minn.Stat. § 117.041, subd. 2(a) (2006).

The statute further provides that before entering the property, the political subdivision must ask the property owner for permission to enter, and if the owner refuses to consent to the entry, the political subdivision must apply for a court order authorizing the entry. *Id.*, subd. 2(b) (2006). If the political subdivision meets the standards in Minn.Stat. § 117.041, subd. 2(a), the court shall issue an order. *Id.*

The port authority applied for a court order authorizing it to enter IAAI's property, and the district court concluded that the port authority met all three standards in Minn.Stat. § 117.041, subd. 2(a). IAAI does not dispute that the port authority met the standards set forth in Minn.Stat. § 117.041, subd. 2(a)(2)-(3); it argues only that the port authority did not meet the

standard in Minn.Stat. § 117.041, subd. 2(a)(1).

◼ Minn.Stat. § 117.041, subd. 2(a)(1) requires the port authority to show that it has reason to believe that acquisition of IAAI's property pursuant to eminent-domain proceedings may be required. IAAI argues that the port authority did not meet this standard because it did not show that there is any purpose for which the port authority could use eminent-domain proceedings to acquire IAAI's property, and if eminent-domain proceedings could not be used to acquire the property, the port authority could not have reason to believe that it may be required to use eminent-domain proceedings to acquire the property.

◼ IAAI's argument is based on the fundamental principle that the power of eminent domain can only be used to acquire property for a public use or public purpose. *See Hous. & Redevelopment Auth. v. Schapiro*, 297 Minn. 103, 106, 210 N.W.2d 211, 213 (Minn.1973) ("It is elementary that the power of condemnation may be exercised only for a public use or purpose."). In 2006, the legislature affirmed this principle when it amended the eminent-domain statute to expressly state, "Eminent domain may only be used for a public use or public purpose." 2006 Minn. Laws ch. 214, § 1 at 195 (codified as Minn. Stat. § 117.012, subd. 2 (2006)).

In 2006, the legislature also defined "public use" or "public purpose" for the purposes of Minn.Stat. ch. 117 and any other general or special law authorizing the exercise of the power of eminent domain. This definition states:

(a) "Public use" or "public purpose" means, exclusively:

(1) the possession, occupation, ownership, and enjoyment of the land by the general public, or by public agencies;

(2) the creation or functioning of a public service corporation; or

(3) mitigation of a blighted area, remediation of an *environmentally contaminated area*, reduction of abandoned property, or removal of a public nuisance.

(b) The public benefits of economic development, including an increase in tax base, tax revenues, employment, or general economic health, do not by themselves constitute a public use or public purpose.

2006 Minn. Laws ch. 214, § 2 codified at Minn.Stat. § 117.025, subd. 11 (2006) (emphasis added).

IAAI contends that because the port authority did not identify a public use or public purpose for which IAAI's property would be used, the port authority did not demonstrate that it has reason to believe that it would be required to use eminent-domain proceedings to acquire IAAI's property. The district court concluded:

> In Resolution 4212, the Port Authority had reason to believe that the lack of economic investment, the marginal condition of the Arlington–Jackson West properties, and the discovery and environmental analysis demonstrating contamination, satisfied the criteria of Subdivision 2(a)(1) of Minn.Stat. § 117.041. The Port Authority concluded it has reason to believe that acquisition of some or all of the Parcels in Arlington–Jackson West may be required. Therefore, Minn. Stat. § 117.041, Subd. 2(a)(1) is satisfied.

But Resolution 4212 does not identify "the discovery and environmental analysis demonstrating contamination" as a basis for the port authority having reason to believe that acquisition of some or all of the parcels in Arlington–Jackson West pursuant to eminent-domain proceedings may be required. Resolution 4212 identifies "the results of environmental analyses done during Phase I" as a basis for the port authority having "good reason to believe that one or more hazardous substances, pollutants, and/or contaminants are present in the western section of the District and the release of one or more hazardous substances, pollutants, and/or contaminants . . . may have occurred in the western section of the District." Having reason to believe that hazardous substances, pollutants, and/or contaminants are present on the property satisfies the standard in Minn.Stat. § 117.041, subd. 2(a)(2), but having reason to believe only that these substances are present in some quantity is not sufficient to satisfy the standard in Minn.Stat. § 117.041, subd. 2(a)(1), which requires that the port authority have reason to believe that acquisition of IAAI's property pursuant to eminent-domain proceedings may be required.

Under Minn.Stat. § 117.025, subd. 11(a)(3), "remediation of an environmentally contaminated area" is a public use or public purpose for which property may be acquired under the eminent-domain statute. But for purposes of the eminent-domain statute,

> "Environmentally contaminated area" means an area:

> (1) in which more than 50 percent of the parcels contain any substance defined, regulated, or listed as a hazardous substance, hazardous material, hazardous waste, toxic waste, pollutant, contaminant, or toxic substance, or identified as hazardous to human health or the environment under state or federal law or regulation; *and*

> (2) for which the estimated costs of investigation, monitoring and testing, and remedial action or removal, as defined in section 115B.02, subdivisions 16 and 17, respectively, including any state costs of remedial actions, exceed 100 percent of the assessor's estimated mar-

ket value for the contaminated parcel, as determined under section 273.11, for property taxes payable in the year in which the condemnation commenced, or for which a court of competent jurisdiction has issued an order under law or regulations adopted by Minnesota or the United States, that clean up or remediation of a contaminated site occur and the property owner has failed to comply with the court's order within a reasonable time.

Minn.Stat. § 117.025, subd. 8 (2006) (emphasis added). Under the plain language of this definition, which requires that the conditions in both paragraphs (1) and (2) be met to demonstrate that property is in an environmentally contaminated area, it is not sufficient to show only that there are parcels in the area that contain a statutorily identified substance. It is necessary to show that more than 50% of the parcels contain the identified substances and that either (a) the estimated costs of investigation, monitoring, testing, and remedial action or removal of the substances exceeds the assessor's market value of the property; or (b) a court has ordered that clean up or remediation of the property occur and the property owner has failed to comply with the order within a reasonable time.

Resolution 4212 does not address the estimated costs of identifying and removing the substances on IAAI's property or indicate that a court has ordered that either clean up or remediation of the property occur, and no evidence that addresses these elements of the definition of "environmentally contaminated area" was admitted at the hearing before the district court. Without evidence that at least one of these elements exists, the port authority could not have reason to believe that acquiring IAAI's property pursuant to eminent-domain proceedings may be required in order to remediate an environmentally

contaminated area. Therefore, the district court erred in concluding that the port authority satisfied the requirement in Minn.Stat. § 117.041, subd. 2(a)(1).

The port authority argues that it made the showing required under Minn.Stat. § 117.041, subd. 2(a)(1), because the operative term in Minn.Stat. § 117.041, subd. 2(a)(1), is "may," and "may" is permissive. *See* Minn.Stat. § 645.44, subd. 15 (2006) ("'May' is permissive."). But although the port authority is correct that when used in Minnesota Statutes, "may" is permissive, applying this meaning in Minn.Stat. § 117.041, subd. 2(a)(1), supports our conclusion that the port authority did not satisfy the requirement in that statute.

To satisfy this requirement, the port authority needed to show that it "has reason to believe that acquisition of the property may be required pursuant to eminent domain proceedings." Minn.Stat. § 117.041, subd. 2(a)(1). Simply inserting the statutory definition of "may" into this phrase leads to the conclusion that the port authority needed to show that it has reason to believe that acquisition of the property *is permitted* pursuant to eminent-domain proceedings. To show that it has reason to believe that acquisition of the property is permitted pursuant to eminent-domain proceedings, the port authority would need to show that there is a public use or a public purpose for the acquisition. The port authority argues correctly that it did not need to show that it will acquire the property pursuant to eminent-domain proceedings; it only needed to show that it may. But it may acquire the property pursuant to eminent-domain proceedings only if there is a public use or a public purpose for the acquisition, and the port authority did not identify a public use or public purpose for which it could acquire IAAI's property.

Because we are reversing the district court's order authorizing the port authority to enter IAAI's property to conduct environmental testing, the port authority is not authorized to conduct environmental testing, and IAAI's claims that the environmental testing constitutes an unreasonable search and seizure and a taking that requires just compensation have become moot. Therefore, we will not address the claims.

## DECISION

Because the port authority did not identify a public use or public purpose for which IAAI's property could be acquired in eminent-domain proceedings, it did not satisfy the standard in Minn.Stat. § 117.041, subd. 2(a)(1), to obtain an order authorizing it to enter the property to conduct environmental testing.

**Reversed.**